IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PULSE SYSTEMS, INC.,

        Plaintiff,

v.                                                       Case No. 6:15-cv-01392-JTM

SLEEPMED INCORPORATED,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on defendant SleepMed's motion to dismiss. (Dkt. 7). The motion alleges that the plaintiff's claims must be submitted to mediation before plaintiff can bring the lawsuit. Although the court agrees with SleepMed that the parties' contract requires mediation, the court concludes that Pulse System's damage claims should be stayed, rather than dismissed, until the parties complete the mediation process.

**Background**. Pulse Systems filed this action in the District Court of Sedgwick County, Kansas. Dkt. 9-1. SleepMed subsequently removed the case based upon this court's diversity jurisdiction. Dkt. 1.

The following allegations are taken from the first amended petition. Dkt. 9-1 at 10. Pulse Systems developed and licensed medical office software for scheduling appointments, maintaining patient information, billing and other activities. In June 2001, the parties entered into an agreement under which SleepMed purchased fifty

"seat licenses" for use of the Pulse Systems software. (A "seat" means a computer, workstation or terminal used to access the software.) Under this 2001 Agreement, SleepMed was supposed to monitor the number of seats being used and to pay for any extras that were used. The agreement also provided that Pulse Systems would maintain the software and provide support in exchange for an ongoing fee. According to Pulse Systems, the 2001 Agreement contained a "Dispute Resolution" clause which provided that in the event a dispute arose with respect to any matter under the agreement, "either party may escalate any such dispute," apparently by referring it to the executive officers of the companies.[1] There was no provision mandating mediation in the 2001 Agreement. In 2009, Pulse Systems advised that its records showed that SleepMed was using fifty-four devices, and SleepMed agreed to purchase four additional seat licenses.

In 2012, the parties entered into an agreement for the purchase of Pulse System's EHR software, which was used to create, maintain, and transfer patient records and to prescribe medications in electronic format, all in compliance with a new federal law. SleepMed agreed to purchase nine physician licenses and three mid-level provider (nurse practitioner, physician assistant, etc.) licenses for use of the software. The 2012 agreement called for SleepMed to pay a monthly fee for the EHR software and for maintenance and support. It also provided that SleepMed would pay a separate, adjusted monthly fee for maintenance and support of the previously purchased Pulse software.

---

[1] Although both parties cite to the 2001 Agreement, neither party has attached a copy. Nevertheless, the contents of that agreement are not disputed. Moreover, the court can take judicial notice of a copy of the 2001 Agreement filed by the parties in related litigation. *See SleepMed Inc. v. Pulse Systems, Inc.*, No. 15-cv-14041, Dkt. 1-1 (U.S. Dist. Ct., D. Mass.).

Pulse Systems alleges that it discovered in 2014 that SleepMed was using more data than could reasonably be used given the number of licenses purchased. In December 2014, Pulse Systems submitted an invoice to SleepMed for about $2.4 million, a sum that was apparently derived from Pulse Systems' information about SleepMed's data usage. SleepMed contended the invoice was based on inaccurate information. Pulse Systems claims that SleepMed has failed or refused to provide accurate information concerning its usage.

The petition contains seven counts: two counts for breach of contract (one each for the 2001 and the 2012 agreements) for unauthorized use of Pulse software in excess of the licenses and for refusal to provide accurate information concerning usage; fraud by concealing unauthorized use of the software and by providing false information concerning the number of facilities using it; negligent misrepresentation concerning the same; unjust enrichment; an equitable claim for an accounting; and specific performance.

SleepMed's motion to dismiss asserts that the 2012 agreement contains a mandatory mediation provision:

> DISPUTE RESOLUTION. Licensor and Licensee acknowledge and agree that a violation of any of the terms of this Agreement and any AUA will cause irreparable injury for which adequate remedy at law is not available. Therefore, either Party is entitled to an injunction, restraining order or other equitable relief from any court of competent jurisdiction, compelling compliance with, or restraining either Licensor or Licensee, as may be the case, from committing any violation of the provisions of this Agreement. In addition to any remedies for injunctive relief that are available at law or equity, if any dispute arises with respect to the subject matter of this Agreement, except as otherwise provided in paragraph 10 above, the parties shall first attempt to reach a mutually satisfactory

> resolution. If the parties are unable to resolve the dispute, each of the parties shall have a period of thirty (30) days to select a mediator which shall each have [sic] an additional period of thirty (30) to select a third mediator (the "Mediator") to mediate the dispute. During the mediation, the parties shall act in good faith to attempt to reach a reasonable and fair resolution to the dispute. Notwithstanding the foregoing, the provisions of this paragraph shall not suspend or otherwise modify or amend either of the party's obligations arising hereunder during the period of mediation unless mutually agreed to by and between the parties and evidenced by a signed writing by each of the parties.

Dkt. 8-1 at 11.

SleepMed contends the parties started the mediation process, with hotels and flights booked for the mediation, but (according to SleepMed's version) Pulse suggested that the parties "toll" the mediation to allow the companies' respective Chief Executive Officers to attempt to resolve the dispute. Dkt. 8 at 2. SleepMed contends it sent information to Pulse for that purpose, together with a good-faith settlement offer, but Pulse summarily rejected the offer. It alleges that Pulse threatened to withhold software support, prompting SleepMed to threaten to seek injunctive relief. SleepMed alleges that it subsequently demanded that the mediation be rescheduled, but Pulse responded by filing the instant suit. SleepMed claims Pulse put a "credit hold" for non-payment on its account, prompting SleepMed to file a suit for injunctive relief in U.S. District Court for the District of Massachusetts. *See SleepMed Inc. v. Pulse Systems, Inc.*, No. 15-cv-14041 (U.S. Dist. Ct., D. Mass.). That court subsequently held, on January 20, 2016, that SleepMed had not shown an immediate threat of irreparable harm, and it denied without prejudice SleepMed's motion for a preliminary injunction. Dkt. 13-2.

4

SleepMed contends the parties' contract makes mediation mandatory and that the appropriate remedy for Pulse's asserted failure to do so is a dismissal under either Rule 12(b)(1) or 12(b)(6). Dkt. 8 at 5. It argues that the petition alleges nothing more than a breach of contract and it "is legally defective, either because it fails to state a viable claim and/or because the dispute belongs in mediation and until that has occurred, this court lacks subject matter jurisdiction." *Id.* at 6-7.

In response, Pulse Systems says that its claims "primarily arise" out of the 2001 Agreement, which does not mandate mediation, and that it has no obligation to mediate. Even if the 2012 contract applies, it argues, the provision did not make mediation a condition precedent to the filing of a lawsuit. Moreover, Pulse contends it has complied with the mediation provision. It alleges that SleepMed was the one that suggested they "forego" the meeting with the mediator in favor of an attempted resolution by the companies' CEOs, and that SleepMed used the resulting delay to obtain critical software updates from Pulse while failing to make any significant efforts to resolve the dispute. Dkt. 10 at 9-11. Pulse Systems argues that its efforts to resolve the dispute over the course of nearly one year "satisfy any obligation created by the 2012 Contract or elsewhere to participate in dispute resolution, including mediation, prior to filing suit." *Id.* Finally, Pulse Systems argues that SleepMed has waived or is estopped from asserting any condition precedent because it requested cancellation of the meeting with the mediator and then used the ensuing delay to obtain contractual benefits.

Pulse Systems contends this court has subject matter jurisdiction and that dismissal under Rule 12(b)(1) is not appropriate. It argues that dismissal under Rule

5

12(b)(6) is also inappropriate for the reasons discussed above. Even if the court were to conclude that mediation is required, Pulse argues that a stay rather than dismissal is the appropriate response.

**Discussion**. The court first rejects SleepMed's argument that a failure to comply with a contractual mediation requirement deprives this court of subject matter jurisdiction. The court has jurisdiction over the subject matter because the suit is between citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1). *See also Stone & Webber, Inc. v. Ga. Power Co.*, 968 F.Supp.2d 1, 5-6 (D. D.C. 2013); *Dominion Transmission, Inc. v. Precision Pipeline, Inc.*, 2013 WL 5962939, *2 (E.D. Va., Nov. 6, 2013) (subject matter jurisdiction concerns the court's power to hear a case; that power is unaffected by whether the parties have complied with the contract); *Vision Bank v. Kaiser*, 2010 WL 4269152, *1 (S.D. Ala., Oct. 22, 2010) ("Failure to satisfy a contractual condition precedent to suit does not deprive a court of subject matter jurisdiction."). The failure to satisfy a contractual condition may or may not warrant the dismissal of contract-based claims, but it does not mean the court lacks authority to rule on the claims.

A fair reading of the dispute resolution clause of the 2012 Agreement shows that mediation is required with respect to any claim for damages under that agreement. Pulse Systems argues that the clause does not apply to its claims, but it does not explain how that can be, given that at least five of the claims are expressly based on the 2012 Agreement, and the other claims arguably raise it by implication. *See* Dkt. 9-1 at 10. At least some of these claims seek damages based upon the 2012 Agreement. The court

thus concludes that the mediation provision of the 2012 Agreement applies and that it requires the parties to engage in mediation.

Although the mediation clause is not entirely clear, and it does not *expressly* state that a suit for damages cannot be filed prior to mediation, it does require that the parties "first" attempt an informal resolution and then, if that is unsuccessful, that they obtain a mediator "to mediate the dispute." *Cf. Santana v. Olguin*, 41 Kan.App.2d 1086, 1093-94, 208 P.3d 328 (2009) (although "the subject provision does not expressly require that submission to mediation must *precede* the filing of suit[,] … this sequence is implied … when considering the totality of the provision.") (emphasis in original). Pulse Systems argues that it satisfied this provision because it made significant efforts and it "participated in mediation." Dkt. 10 at 8. The briefs make clear, however, that the mediation was put on hold before the principal scheduled meeting with the mediator took place. The process was begun, as Pulse Systems emphasizes, but it was never completed. The court concludes that the parties have not satisfied the mediation requirement. Of course, it is debatable whether requiring a non-binding mediation at this point is likely to be beneficial, but if the parties have any desire of salvaging what was apparently a long-standing business relationship, the involvement of a third-party mediator might assist them in doing so. At any rate, the requirement for mediation is one that the parties themselves agreed upon in their contract, and the court concludes they must comply with it.

The court has considered but rejected Pulse Systems' arguments that SleepMed waived or is estopped from invoking the mediation requirement. Waiver requires a

showing of the intentional relinquishment of a right. Even if SleepMed was the one to suggest cancellation of the meeting with the mediator in favor of an attempted resolution by the CEOs, that would not show that SleepMed intended to give up any right thereafter to invoke mediation. It is entirely consistent with an intent to postpone mediation until after a try at informal resolution. *See e.g., Dominion Transmission*, 2013 WL 5962939 at *6 ("In light of the federal bent towards enforcement of ADR provisions, Dominion's burden as the party asserting waiver, and the … high standard for establishing waiver, the Court finds that Dominion has not proffered 'clear, precise, and unequivocal evidence' that Precision knowingly and intentionally waived its right to insist upon arbitration."); *Tattoo Art, Inc. v. Tat Intern., LLC,* 711 F.Supp.2d 645, 652 (E.D. Va. 2010) ("Although Plaintiff makes a sympathetic case that it has been strung along by the Defendants, none of these actions represent an *intentional* … relinquishment of Defendants' rights" to request mediation). Similarly, the court concludes that Pulse Systems has not cited a change of position by SleepMed or prejudice to itself sufficient to prevent SleepMed from invoking the mediation clause by reason of estoppel. As the court stated, the parties themselves agreed upon this mediation provision and now they must comply with it.

Case law provides that a court faced with these circumstances has discretion to dismiss or to stay the action to permit mediation to take place. *See Dominion Transmission*, 2013 WL 5962939 at *4 ; *Swartz v. Westminister Services, Inc.*, 2010 WL 3522141, *2 (M.D. Fla., Sept, 8, 2010) (when faced with noncompliance with dispute resolution provisions, "district courts are vested with discretion to determine whether

8

stay or dismissal is appropriate"). After weighing the circumstances, the court concludes that a stay is more appropriate in this case. Presumably the parties can accomplish mediation in short order, given that they have already prepared for it once. And the court sees no valid reason for the parties to incur duplicative litigation costs through the filing of another action in the event that their mediation proves unsuccessful. Additionally, Pulse Systems filed a motion for preliminary injunction on February 19, 2016. Dkt. 14. The motion seeks to enjoin SleepMed "from use of the PulsePro software in excess of the 54 Seat licenses authorized and permitted under the 2001 Contract and [from] use in its management services for outside practices and providers," as well as enjoining SleepMed's "use of the EHR software in excess of the [12 licenses] under the 2012 EHR Agreement…." Dkt. 14 at 6. The dispute resolution provision in the 2012 Agreement does not require mediation on claims for injunctive relief to restrain a party from violating the agreement. Accordingly, the foregoing claim for injunctive relief is not subject to the mediation requirement and will not be stayed. Otherwise, however, the action will be stayed with respect to the claims for damages to permit the required mediation of those claims.

**IT IS THEREFORE ORDERED** this 23rd day of February, 2016, that SleepMed's Motion to Dismiss (Dkt. 7) is DENIED. Plaintiff's claims for damages are STAYED for a period of 45 days to permit the required mediation to take place. Plaintiff shall file a status report with the court on or before April 4, 2016.

                                                         ____s/ J. Thomas Marten____
                                                         J. THOMAS MARTEN, JUDGE